UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON BOND and <br> DAVID LEAR, individually and as <br> class representatives of all those <br> similarly situated, <br> <br>         Plaintiffs, <br> <br>   v. <br> <br> VEOLIA WATER NORTH AMERICA <br>  OPERATING SERVICES, INC., <br> VEOLIA WATER INDIANAPOLIS, LLC, <br>  and <br> VEOLIA WATER NORTH AMERICA <br>  OPERATING SERVICE, LLC, <br> <br>         Defendants. | Case Number:  1:08-cv-00634-DFH-JMS |

**PLAINTIFFS' BRIEF IN SUPPORT
OF MOTION TO REMAND TO STATE COURT**

**I. INTRODUCTION**

The Class Action Fairness Act ("CAFA") was enacted by Congress to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel.  CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications.  It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent.  Although CAFA casts a wide net, Congress preserved certain exceptions designed to keep purely local matters and issues of particular state concern in the state courts.

This is not a case implicating interstate interests nor is it a case for which CAFA was enacted to address. Rather, this case falls squarely within the local concern exceptions provided by Congress in CAFA and therefore should be remanded to state court.

Plaintiffs' Complaint was filed on April 23, 2008. The defendants include three separate but related entities: Veolia Water North America Operating Services, Inc., Veolia Water North America Operating Service, LLC; and Veolia Water Indianapolis, LLC (collectively "Veolia"). Veolia manages, operates, and maintains the water utility owned by the City of Indianapolis, Department of Water Works ("Department of Water Works" or "Indianapolis Water Company"). The water utility has in excess of 290,000 active service connections, serving in excess of 1,000,000 customers in the Indianapolis metropolitan area. (Exhibit "G", pp. 3-4). The service area comprises most of Marion County, and parts of Hancock, Hamilton, Johnson, Hendricks, and Morgan counties ("Service Territory", see also Exhibit "H"). The utility which Veolia operates includes water production, purification, transport and other facilities. (the "Water Works").

Veolia operates the Water Works pursuant to a 20 year management agreement entered into with the Department of Water Works on March 21, 2002 ("Management Agreement"). (Complaint, Exhibit "A"). Pursuant to the terms of the Management Agreement, Veolia is responsible for, among many other tasks, meter reading, billing and collection, and customer service. Veolia employs the people who actually run and maintain the Water Works. In a very real sense, day-to-day activities at the Water Works are solely in the control of Veolia, with oversight provided by the Department of Waterworks. (Exhibit "G", p. 4; Exhibit "I", p. 5).

The Complaint alleges that Veolia failed to read residential meters in the Service Territory at least once every two months, as provided by tariff. Moreover, Veolia utilized a

estimating logic for those months which it did not actually read residential meters that was both unapproved and resulted in an over-estimated water usage far in excess of actual or historic usage. This conduct combined to cause inflated bills over extended periods of time. Plaintiffs have alleged four separate counts sounding in contract and negligence, as well as a claim under Indiana's Deceptive Practices Act and a claim for constructive fraud. The class definition proposed by Plaintiffs includes "all residential customers of Indianapolis Water which are serviced by Veolia". (Complaint, ¶ 32). The named plaintiffs are residents of Zionsville and Indianapolis respectively.

## II.  ANALYSIS

**A.     Subject Matter Jurisdiction Under CAFA.**

Veolia removed this case pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, and 1446. Specifically, Veolia asserts that 28 U.S.C. § 1332(d)(2), commonly known as CAFA gives this Court original jurisdiction because all of its prerequisites are satisfied. Pursuant to CAFA, federal courts have jurisdiction in diversity over class actions where: (1) the aggregate amount in controversy exceeds $5,000,000; (2) any member of the plaintiff class is a citizen of a state different from any defendant ("minimal diversity"); (3) the primary defendants are not states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; and (4) the number of the plaintiff class is 100 or more. *Hart v. FedEx Ground Package Sys.,* 457 F.3d 675,679 (7th Cir. 2006). The defendant has the burden of establishing that an action is removable, and doubts concerning removal must be resolved in favor of remand to state court. *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446,448 (7th Cir. 2005).

For purposes of this Motion to Remand, Plaintiffs do not argue that CAFA's jurisdictional prerequisites are not satisfied. Rather, the central issue framed by this Motion is whether this Court is required under CAFA to abstain from hearing this case. The provisions of 28 U.S.C. § 1332(d)(4)(A) and 28 U.S.C. § 1332(d)(4)(B) are known respectively as the "local controversy" exception and the "home-state controversy" exception to the exercise of federal diversity jurisdiction under CAFA. They are meant to preserve for state courts those class actions of a purely local nature. They respectively provide as follows:

> A district court shall decline to exercise jurisdiction under paragraph 2 –
>
> (A)(i)  over a class action in which –
>
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least one defendant is a defendant –
>
> (aa) from whom significant relief is sought by members of the plaintiff class;
>
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed class; and
>
> (cc) who is a citizen of the State in which the action was originally filed, and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3 year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
>
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

The plaintiff seeking remand to state court bears the burden of proving, by a preponderance of the evidence, the applicability of the local controversy and the home-state exceptions in a given case. *Hart v. FedEx Ground Package Sys. Inc.,* 457 F.3d at 679-82. CAFA also contains a provision for discretionary abstention from the exercise of jurisdiction under the statute, known as the "interests of justice" exception. 28 U.S.C. § 1332(d)(3). Plaintiffs assert that all three of the exceptions provided under CAFA apply to this case and the Court should grant their Motion to Remand.

**B.   The Local Controversy Exception Requires the Court to Decline to Exercise Jurisdiction.**

A district court must decline to exercise jurisdiction over a class action if a plaintiff proves, by a preponderance of the evidence, all of the following elements: (1) greater than two-thirds of the "members of all proposed plaintiff classes in the aggregate" are citizens of the state in which the actions were originally filed; (2) at least one defendant is a defendant from whom "significant relief" is sought, whose alleged conduct "forms a significant basis for the claims" asserted and who is a citizen of the State in which the action was originally filed; (3) the "principal injuries" resulting from the alleged conduct were incurred in the state in which the action was originally filed; and (4) no other class action has been filed against any of the defendants asserting the "same of similar factual allegations" during the three-year period preceding the filing of the class action. As is demonstrated below, all four of these elements are present in this case, therefore the Court must remand this case to state court.

**1.   The Plaintiff class meets the two-thirds threshold.**

In order to meet the initial threshold, it must be shown that more than two-thirds of the plaintiff class are *citizens* of Indiana. The proposed class definition is "all residential customers of Indianapolis Water [Company] which are serviced by Veolia." (Complaint, ¶ 32). Under the

5

Management Agreement Veolia services all Indianapolis Water Company customers. Therefore, the issue is whether the group that comprises these residential customers includes two-thirds or more that are citizens of Indiana.

For natural persons, state citizenship is determined by one's domicile. *Dausch v. Rev. Greg Rykse,* 9 F.3d 1244 (7th Cir. 1993). Domicile is established by establishing both an individual's residence and intent to maintain the residency indefinitely. *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993). To establish domicile within a state, a person need not intend to remain there forever; he need only intend to "make that place his home for the time at least." *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980). Among the factors to be considered when determining domicile are the location of a person's residence, family and personal belongings, and where taxes are paid. *United States v. Scott*, 472 F.Supp 1073 (N.D. Ill. 1979), *aff'd* 618 F.2d 109 (7th Cir. 1980). CAFA does not require exact citizenship of each member of the plaintiff class, the court may still apply a CAFA exception where the pleadings and circumstances of the case are such that it is reasonably likely that two-thirds of the class members are citizens of the forum. *Dunham v. Coffeyville Resources, LLC*, 2007 U.S. Dist. LEXIS 82606 (D. Kan. 2007); *Mattera v. Clear Channel Communs., Inc.*, 239 F.R.D 70, 80 (S.D.N.Y. 2006); *Fiore v. First Am. Title Ins. Co.,* 2005 U.S. Dist. LEXIS 34348 (S.D. Ill. 2005).

Here, there is a reasonable likelihood that more than two-thirds of the class in this case are citizens of Indiana. Attached as Exhibit "A" is the Affidavit of Dr. Trevor Roycroft. Dr. Roycroft performed an analysis of the percentage of "housing units" in the Service Territory that are owner-occupied. He utilized 2000 census data obtained from the U.S. Census Bureau, updated with the most recent 2006 estimates, also from the U.S. Census Bureau. By determining which Census tracts (or parts of tracts) were in the Service Territory, and then determining each

6

tract's percentage of owner-occupied housing units, a composite percentage, weighted by the number of housing units in each tract, was determined. Dr. Roycroft determined that 63.91% of the housing units in the Service Territory are owner-occupied. (Roycroft Aff., Ex. "A", ¶ 11).

The fact that 63.91% of all housing units within the Service Territory are owner occupied is important for a couple of reasons. First, because these are owner-occupied housing units we know that the particular real estate that makes up the housing unit is both owned and occupied by the individual or family in question. This is a strong indication that the owner's domicile is in the Service Territory because it establishes not only residence but also an intention to remain in the State indefinitely. Residency plus ownership of property in which one resides (along with one's personal property) creates a rebuttable presumption of domicile. *Kitson v. The Bank of Edwardsville*, 2006 U.S. Dist. LEXIS at pp. 21-22. Although this metric does not reach the two-thirds threshold (i.e. 66%), it is reasonably likely that the entire class, in the aggregate, easily exceeds it. If this were not the case, one would have to assume that of the remaining 36.09% of housing units in the Service Territory which are renter-occupied, virtually none are citizens of Indiana. This makes no intuitive sense.[1]

The nature of the proof required to show that the two-thirds threshold has been met is often the subject of controversy because while the residency prong of the citizenship analysis is often more easily determined, the "intent" to remain prong often is not. For example, Judge Young in *Musgrave v. Aluminum Company of America, Inc.,* 2006 U.S. Dist. LEXIS 48192 (S.D. Ind. 2006) considered the two-thirds threshold in the context of a class action against an alleged polluter during the period from 1965 to 1979 in the "active and/or inactive areas of the Squaw

---

[1] As is demonstrated by Veolia's Notice of Removal, it is in the best position to come forward with data that would refute Plaintiffs' assertion that more than two-thirds of the class are citizens of Indiana. *See*, ¶ 12, Notice of Removal, concluding that both Plaintiffs are citizens of Indiana due to a combination of their physical presence and continuously active water accounts.

7

Creek Mine" which is located on the banks of the Ohio River. *Id*. at 2.  In attempting to invoke both the local controversy and home state exceptions to CAFA, Plaintiffs provided no evidence of citizenship of the class.  Presumably because the mine was located in a border area of Indiana, and the proposed class embraced a large number of individuals over a 14 year period Judge Young refused to assume the two-thirds threshold was met.

In *Schwartz v. Comcast*, 2006 U.S. Dist. LEXIS 7499 (E.D. Penn. 2006) the district court considered a proposed class of individuals and businesses who "reside or do business in Pennsylvania", and who had subscribed to the defendant' internet service.  The district court in Schwartz found that plaintiffs did not meet their burden in establishing Pennsylvania citizenship of the class for either the one-third or two-thirds thresholds.  The district court specifically found a lack of evidence showing an intent to remain in the state, stating that a subscription to internet service is not indicative of an intent to remain permanently in the state.  *Id.* at 18.

The reluctance of a court, such as in *Schwartz*, to draw conclusions concerning the intent of the class member to remain in the state changes depending on the nature of the harm/conduct alleged and the totality of the circumstances presented.  For example, in *Dunham v. Coffeyville Resources, LLC*, 2007 U.S. Dist. LEXIS 82606 (D. Kan. 2007), the district court considered a class of "residents, domiciliaries, and property owners of Coffeyville, Kansas" who were affected by pollution from a nearby refinery.  The district court found that the two-thirds threshold was met citing the fact that due to the purely local nature of the class, and the proximity of the class members to the refinery demonstrated that there was a "reasonable probability" that the vast majority were citizens of Kansas. *Id.* at 7-9.  The district court relied primarily on the allegations of the complaint that this was an action brought by Kansans for an event occurring in Kansas. *Id.* at 8.

Likewise, in *Kitson v. The Bank of Edwardsville*, 2006 U.S. Dist. LEXIS 85285 (S.D. Ill. 2006) the district court did not undergo an analysis of "intent to remain" and instead relied on the mailing addresses of the class members and the fact that the defendant had a relatively small operation that was locally based in holding that the two-thirds threshold was met. *Id.* at 20-24. Indeed, the district court held that neither defendant "has put before the Court evidence that the class members who are natural persons are not domiciled at their Illinois mailing addresses, and therefore the Court is entitled to assume that they are". *Id.* at 23.

It goes without saying that in most cases considering the two-thirds citizenship threshold under the exceptions to CAFA there is an element of ambiguity concerning the "intent to remain in the state" requirement. Without thousands of mini-trials of each individual potential class member there can never be mathematical certainty as to how many of them intend to permanently stay in the state. Instead, district courts have relied on a combination of considerations to determine this factor.

More than most, this case, and the nature of the evidence before the Court, can only lead to the conclusion that plaintiffs have met the two-thirds threshold. Virtually two-thirds of the potential class lives in owner-occupied housing, itself a strong indicator that these individuals not only intend to stay in the state because they own property here, but also pay property taxes on that property, and have personal property and family in the state. Moreover, the totality of the circumstances shows that this is a case by Hoosiers for events occurring in Indiana. Veolia Indianapolis is, both by name and scope, a local operation serving a distinct geographic area entirely within the state. Moreover, the underlying water service which is the subject of this action is intimately connected with individuals more likely to be citizens of this state than not.

Given that there is a reasonable likelihood that more than two-thirds of the potential class are citizens of Indiana, this element of the local controversy exception is met.

### 2. Veolia Water Indianapolis, LLC is a citizen of Indiana from whom significant relief is sought, and whose conduct forms a significant basis for the claims.

Plaintiffs have sued three legal entities, but Veolia Water Indianapolis, LLC ("Veolia Indianapolis") is clearly before all others in importance. By any reasonable analysis, Veolia Indianapolis clearly meets this prong of the local controversy exception of CAFA. Veolia Indianapolis is responsible for performance of the Management Agreement and is responsible for the day-to-day operation of the Water Works. (Exhibit "G", p. 4).[2] Veolia Indianapolis, through its employees, is specifically responsible for the meter reading, billing, and customer service functions which form the basis of the Complaint.

In an Affidavit of David Gadis, formerly the Chief Operating Officer and Vice President of Operations of Veolia Indianapolis, and now its President, filed in Cause No. 1:05-cv-1063-LJM-WIL in or about July, 2007, he testified that Veolia Indianapolis' "sole business purpose is to operate Indianapolis Waterworks". (Exhibit "B", p. 2, ¶ 10). Moreover, his affidavit suggests that the some 325 local employees who operate the Water Works are employees of Veolia Indianapolis, and that decisions to hire or fire such employees are made locally and not by the parent entity nor the City of Indianapolis. (Exhibit "B", pp. 1-2, ¶¶ 2-6, see also Exhibit "G", p. 4). Moreover, pre-filed testimony submitted to the Indiana Utility Regulatory Commission ("IURC"), by the City of Indianapolis, Department of Waterworks, confirms Veolia Indianapolis' singular role in the administration of, and performance under the Management

---

[2] The Management Agreement was entered into by US Filter Operating Services, Inc., which later changed its name to Veolia Water North American Operating Services, Inc., then assigned its interest under the Management Agreement to a newly formed affiliate, Veolia Indianapolis. (Exhibit "G", p. 4).

Agreement.  On July 24, 2006, Carlton E Curry testified, in relevant part, as follows in Cause No. 43056 :

> Q.5  How is the day-to-day operation of the Department's [Department of Waterworks, Indianapolis] water utility system conducted?
>
> A.5  Day-to-day operation of the system is conducted by Veolia Water Indianapolis, LLC ("Veolia") under a management agreement dated March 21, 2002 (the "Management Agreement") between it and the Department.
>
> Q.6  What are your duties and responsibilities as the Department's Director of Contracts and Operations?
>
> A.6  My primary responsibility is to oversee Veolia's operation of the water utility in order to ensure its compliance with the terms and conditions of the Management Agreement.

(Exhibit "C", p. 2).  The day-to-day operation of Veolia Indianapolis is comprehensive in scope, including field services, production, engineering, construction, procurement, risk management, asset management, laboratory services, health and safety, security and other functions.  (Exhibit "D", January 10, 2008 Veolia Indianapolis press release).  Veolia Indianapolis reports monthly to the Department of Waterworks about various operational aspects of the Water Works, including customer service issues, water production, and capital improvements.  (Exhibit "E", March Operating Report dated April 17, 2008).  As is clear from the Operating Report, Veolia Indianapolis is accountable to the Department of Waterworks for all aspects of the operation of the Water Works.  Most importantly, the Management Agreement specifically provides that Veolia Indianapolis is responsible for the meter reading, billing and collection, and customer service functions.  (Complaint, Exhibit "A", Management Agreement, Section 4.01(a)(9)).

Veolia Indianapolis' conduct forms a "significant basis for the claims" asserted because it is directly responsible under the Management Agreement for the functions such as meter reading,

11

billing and collection, and customer service which form the gravamen of each of the four counts of the Complaint. Moreover, because of its status as the operational entity who is directly responsible for the conduct giving rise to Plaintiffs' claims, it would be primarily liable to the class. Therefore, it is an entity from whom "significant relief" is sought.

        3.     **Veolia Indianapolis is a citizen of Indiana.**

The final element under this prong of the local controversy exception is that Veolia Indianapolis must be shown to be a citizen of the state in which the action was originally filed. In its Notice of Removal, Veolia alleges that:

> As to any party who is an LLC, a limited liability company's citizenship "for purposes of the diversity jurisdiction is the citizenship of its members." [citation omitted] Therefore, the Court must be advised of the citizenship of all members of each LLC [citation omitted] Furthermore, citizenship must be "traced through multiple levels" for those members of each LLC who are a partnership or a limited liability company, as anything less can result in a dismissal or remand for want of jurisdiction. [citation omitted]

Veolia alleges in paragraph 14 of the Notice of Removal that under the above analysis it is a citizen of the State of Delaware only. Veolia is only half right.

28 U.S.C. § 1332(d)(10) provides that "[f]or purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." This is a legislative repeal of judicial construction of the diversity statute holding that the citizenship of an unincorporated association is the citizenship of its members. *See*, *Kitson v. The Bank of Edwardsville*, 2006 U.S. Dist. LEXIS 85285, p. 24, n. 3 (S.D. Ill. 2006), *Dunham v. Coffeyville Resources, LLC,* 2007 U.S. Dist. LEXIS 82606, pp. 9-10 (Dist. Kan. 2007). An LLC is an unincorporated association. *Dunham v. Coffeyville Resources, LLC*, 2007 U.S. Dist. LEXIS 82606. at 10.

12

Therefore, Veolia Indianapolis is not only a citizen of the State of Delaware, as Veolia asserts in its Notice of Removal, but also a citizen of the State of Indiana, because it has its principal place of business here.  As previously stated, Veolia Indianapolis is a locally based entity which employs a workforce that manages and operates the Water Works in central Indiana.  Moreover, in Veolia Indianapolis' filings with the Indiana Secretary of State, its "current principal office address" is given as 1220 Waterway Blvd., Indianapolis, IN 46202". (Exhibit "F", p. 7).  Indeed, it is very likely that Veolia Indianapolis' sole business location is in Indianapolis.  Clearly, this is the address which is the "nerve center" where Veolia Indianapolis' headquarters is located.  *Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991).  Veolia Indianapolis is a citizen of Indiana for purposes of determining whether the local controversy exception applies.

### 4.  The principal injuries from Veolia Indianapolis' conduct occurred in Indiana.

The fourth prong under the local controversy exception is whether the "principal injuries" resulting from the "alleged conduct or any related conduct of each defendant were incurred in the state in which the action was originally filed".  CAFA does not define the term "principal injuries" however the words used in statutes must be given their plain and ordinary meaning. *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000).  "Principal" means "[c]hief, primary, most important;" while an "injury" means "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *Kitson v. The Bank of Edwardsville*, 2006 U.S. Dist. LEXIS 85285, p. 27 (S.D. Ill 2006), quoting *Black's Law Dictionary* (8th ed. 2004).  The injury at issue in this case is the failure to estimate water usage on a bi-monthly schedule and utilizing an estimating methodology that is both unauthorized and results in an overcharge to customers.  The Water Works which Veolia Indianapolis manages and operates, and which

13

serves the customers for which this action is brought, is physically located entirely within the geographic area that is central Indiana. Veolia Indianapolis' employees, who are responsible for reading meters, recording those readings, and determining when those meters are to be read, as well as generating the bills which reflect those meter reads, are all located in Indiana. The principal injuries in this action are clearly and most likely without exception in Indiana.

> **5.     No other class action has been filed alleging the same or similar facts in the past three years.**

The last and final prong of the local controversy exception is whether a class action alleging the same or similar factual allegations was filed during the three year period preceding the filing of this action. There are no such class actions known to Plaintiffs.

For all these reasons, Plaintiffs submit that the Court must decline to exercise its jurisdiction pursuant to the local controversy exception of CAFA. 28 U.S.C. § 1332(d)(4)(A).

**C.     The Home-State Exception Requires the Court to Decline to Exercise Jurisdiction.**

In the alternative, abstention is also appropriate under the Home-State exception to CAFA . Under 28 U.S.C. § 1332(d)(4)(B), the district court shall decline jurisdiction where "[t]wo thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." As discussed in the preceding section, the record in this case shows, by a preponderance of the evidence, that over two-thirds of the class are Indiana citizens. Therefore, the remaining question is whether the "primary defendants" in this case are Indiana citizens as well.

The term "primary defendants" is not defined in CAFA. In *Kitson v. The Bank of Edwardsville*, the District Court for the Southern District of Illinois considered two defendants who were accused of improperly calculating interest on commercial loans. The bank defendant wrote and processed the loans in question. The other defendant sold the proprietary software to

14

the bank which the bank used to calculate interest.  The District Court, in analyzing which defendant was the "primary defendant" under the Home-State exception, held that the bank was the primary defendant because it was directly liable to the plaintiffs, while the other defendant's liability was entirely vicarious because it is alleged to have aided and abetted the wrongful conduct of the bank by supplying the software.  *Id*. at 56-57.  The same result should accrue here.  Veolia Indianapolis is the primary defendant because it is directly liable to the Plaintiffs because it is the entity which undertook the conduct which forms the basis for Plaintiffs' claims.  As the primary defendant, Veolia Indianapolis, as described in a previous section of this brief, is a citizen of Indiana.  Therefore, abstention is also required under the Home-State exception to CAFA.

**D.**     **In the Alternative, Discretionary Abstention Should be Granted.**

The third and final exception to CAFA jurisdiction is found at 28 U.S.C. 1332(d)(3) which reads as follows:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of –
>
> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by the laws of the State in which the action was originally filed of by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger

> than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

This exception is commonly known as the "interests of justice" exception to CAFA jurisdiction. Based on the totality of the circumstances in this case, and the interests of justice, the Court should decline to exercise its jurisdiction.

As Exhibit "A" shows, it is nearly a certainty that more than one-third of the members of the plaintiff class are citizens of Indiana. Moreover, as discussed in previous sections of this brief, Veolia Indianapolis is the primary defendant and is also a citizen of Indiana because its principal place of business is located in Indianapolis. As any reasonable analysis under subsections (A) through (F) will show, there is a distinctly local character to this action which justifies application of this Court's discretionary powers to decline to exercise jurisdiction under CAFA.

The claims in this action involve distinctly local issues, the determination of which will be governed solely by Indiana law. All of the activities alleged by the Plaintiffs, namely meter reading, estimation, and billing, occurred here in Indiana. These claims, almost by definition, do not implicate matters of national or interstate interest. Moreover, the claims will be solely governed by the laws of Indiana and not other states. The issues in this case concern the operation and management of a local water utility and its relationship with its in-state customers. The legal claims include Indiana's Deceptive Practices Act, rules to the IURC and the local tariff which govern Veolia Indianapolis' conduct. In this respect, the issues and law are fundamentally

local because they deal with a local water utility that is physically, and operationally, contained within the borders of Indiana, and more specifically, the Indianapolis Metropolitan area.

The complaint was not pleaded in a manner that seeks to avoid federal jurisdiction. Indeed, Veolia relies almost exclusively in its Notice of Removal on the allegations contained within the Complaint itself. Had Plaintiffs sought to actively avoid federal jurisdiction, Veolia would have had to come forward with extrinsic evidence to carry its initial burden of showing CAFA jurisdiction.

The Plaintiffs brought this case in a forum that was not calculated to gain any unfair advantage, but rather which has a close nexus with the class members, the alleged harm, and the Defendants. The Marion County Superior Court has jurisdiction over the most members of the class, the largest proportion of the geographical territory of the Water Works, as well as the principal place of business of the primary defendant Veolia Indianapolis. The proportion of harm is likewise highly correlated to the Marion County Superior Court's jurisdiction. (*See*, Exhibit "I", p. 7, "75% of customers and 80% of revenues are from Marion County").

Finally, there can be no doubt that the number of citizens of Indiana far outstrips the number of citizens from any other state. Even if the Court finds that Plaintiffs did not meet the two-thirds threshold, there should be no doubt that more than one-third of the class members are Indiana citizens. To the extent there are customers outside Indiana, they will be dispersed among several states, and no one state will have nearly the same interest in the outcome of this action as will Indiana. As previously discussed, there are no known class actions asserting the same or similar claims on behalf of the same or other persons.

### III.  CONCLUSION

This is not the type of case which CAFA was meant to address.  This case does not implicate national or interstate interest.  This case does not seek to impose Indiana law on citizens of other states.  It is a case with distinctly local qualities for which an Indiana state court is the proper forum.  In short, this is a case by Hoosiers for Hoosiers under Indiana law.

For all the foregoing reasons, Plaintiffs respectfully request this Court grant their Motion to Remand to State Court, to order this action transferred to the Marion County Superior Court 7, and for all other appropriate relief.

**STEWART & IRWIN, P.C.**


By     *s/ Peter S. Kovacs*
 Peter S. Kovacs (Attorney # 16771-49)
 251 East Ohio Street
 Suite 1100
 Indianapolis, Indiana  46204
 Phone:  (317) 639-5454
 Fax:  (317) 632-1319

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 9, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

| | |
|---|---|
| Robert D. MacGill<br>rmacgill@btlaw.com | T. Joseph Wendt<br>jwendt@btlaw.com |
| Matthew S. Winings<br>mwinings@btlaw.com | Scott E. Murray<br>smurray@btlaw.com |

                                              *s/ Peter S. Kovacs*
                                              Peter S. Kovacs (Attorney # 16771-49)

**STEWART & IRWIN, P.C.**
251 East Ohio Street
Suite 1100
Indianapolis, Indiana  46204
Phone:  (317) 639-5454
Fax:  (317) 632-1319

SI-181672_1